KELLY & RUBIN, LLP.
ATTORNEYS AT LAW

275 SEVENTH AVENUE, SUITE 1505, NEW YORK, NEW YORK 10001
TEL: 212-691-9393 • FAX: 212-691-1485 • EMAIL: info@kellyrubin.com

May 5, 2008

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
United States Court House
500 Pearl Street
New York, NY 10007

          RE:    **U.S. v. Anthony Davis**
                 **Case No: 07 CR 914 (LAK)**

Judge Kaplan:

     I am counsel for the defendant Anthony Davis. Mr. Davis is scheduled to appear before your Honor on May 16, 2008 to be sentenced pursuant to his plea of guilty to the above referenced indictment. The defendant has pled guilty to participation in a conspiracy to distribute in excess of 50 grams of cocaine base in violation of 21 U.S.C.A. §841 (b) (1) (A) (iii). As a result of his plea of guilty, Mr. Davis stands before the court facing at a minimum, ten (10) years incarceration and a maximum of life. Mr. Davis has been incarcerated since his arrest on this case on May 30, 2007.

     Since that time, he has acknowledged that he is in more trouble now than he could have possibly imagined that he would ever face in his life. I am submitting this letter on behalf of Mr. Davis to request that your Honor impose an "outside guidelines" sentence of 120 months.

mfr:davisA.105(alt)

## KELLY & RUBIN, LLP.

Page 2
Judge Lewis A. Kaplan
May 5, 2008

### PLEA AGREEMENT

In the plea agreement dated December 20, 2007, Mr. Davis agreed to plead guilty to the above reference indictment as noted above. That plea was entered on January 14, 2008 before the Honorable Andrew J. Peck, U.S. Magistrate Judge. In accordance with the applicable sentencing guidelines, both sides agreed that the defendant's base offense level is 34. However, because his conviction pursuant to statute exposes him to a potential life sentence, his base offense level becomes 37. A three level reduction has been stipulated to by the parties based upon the defendant's acceptance of responsibility for his actions, and his giving to the government, timely notice of his intention to plead guilty, making his adjusted offense level 34. Because the defendant has two prior drug felony convictions, the defendant is deemed to be a career offender; therefore is in criminal history category 6. Accordingly, the defendant's guidelines range is 262-327 months.

### SEVERAL FACTORS COMBINE TO CALL FOR A DOWNWARD DEPARTURE IN SENTENCING

As an initial matter, the defendant asks this court to consider the fact that he has attempted to repay society already by waiving many substantive rights; admitting his conduct, taking responsibility for his conduct, and pleading guilty. These actions have assisted society, the government and the judiciary by facilitating the administration of justice. The defendant wishes to further repay society by serving this Court's sentence and achieving total rehabilitation so that he will never again become involved in illegal conduct.

KELLY & RUBIN, LLP.

Page 3
Judge Lewis A. Kaplan
May 5, 2008

## IMPACT OF THE DEFENDANT'S AGE ON RECIDIVISM

The defendant is currently 37 years of age, and he is facing at least the next decade, and possibly more in prison. If the court were to impose a sentence of 120 months, the defendant will be approximately 50 years old by the time he is released from confinement, much older and therefore much less likely to commit another crime in the future. (See www.ussc.gov/publicat/Recidivism_General.pdf) His age at the time of sentencing and at the time of his projected release are factors indicating that it is unlikely he will commit additional crimes in the future. After *Booker*, many courts have considered a defendant's age as a factor for sentencing below the guidelines. See, *Simon v. United States* 361 F. Supp.2d 35, 48 (E.D.N.Y March 17, 2005); *United States v. Thomas*, 360 F. Supp. 2d 238, 243 (D. Mass. 2005); *United States v. Nellum*, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. February 3, 2005). According to the Sentencing Commission, for defendants over forty (40), the risk of recidivism drops dramatically, lessening the need to protect the public from further crimes of the defendant under 18 U.S.C.A. §3553(a)(2)(C). In the United States Sentencing Commission report referred to above, the Commission noted that "recidivism rates decline relatively consistently as age increases from 35.5% under age 21 to 9.5% over age 50".

Because of the defendant's anticipated rehabilitation, his expression of remorse, his clear acceptance of responsibility and his age at release, it is unlikely that he will commit crimes upon his release from prison, and therefore a sentence of no more than 120 months imprisonment is sufficient to achieve the goals of sentencing.

mfr:davisA.105(alt)

KELLY & RUBIN, LLP.

Page 4
Judge Lewis A. Kaplan
May 5, 2008

## THE COCAINE BASE/POWDER COCAINE SENTENCING DISPARITY

As this court is well aware, since Congress established the so called 100:1 ratio for sentencing defendants convicted of cocaine base versus cocaine powder crimes, an extraordinary amount of research and literature has been published concerning the issue. At the time that the sentences were promulgated by passage of the Anti-Drug Abuse Act of 1986 (1986 Act) several of the justifications for the imposition of the harsh disparity have been proven to be incorrect.

The Supreme Court recently took up the issue of the difference in sentencing for the two forms of cocaine in *Kimbrough v. United States* 128 S.Ct. 558. In its decision, the Court reviewed much of the history behind the sentencing disparity. In *Kimbrough*, the Court ruled that, like all other guidelines, the "cocaine guidelines are advisory only...and that the district judge must include the guidelines range in the array of factors warranting consideration." supra. at 564. In fashioning an appropriate sentence for a particular case, the court may consider the "disparity between the Guidelines' treatment of crack and powder cocaine offenses..." in determining whether or not a within guidelines sentence is greater than necessary to serve the objectives of sentencing.

In the United States Sentencing Commission Report to Congress; Cocaine and Federal Sentencing Policy 8 (May 2007) (hereinafter "2007 Report"), the commission noted that the 100:1 ratio rested on assumptions of "the relative harmfulness of the two drugs and a relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support" in *Kimbrough* supra. at 568. Additionally, in *Kimbrough* the court noted that the 2007 Report stated that "the 100:1 ratio Congress embedded in the statute **far** (emphasis added) overstates the relative harmfulness of crack cocaine and the seriousness of most crack cocaine offenses. The commission found that crack is associated with significantly less trafficking related violence... than previously assumed." It also observed that "the negative

Page 5
Judge Lewis A. Kaplan
May 5, 2008

effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure". The commission further noted that "the epidemic of crack cocaine used by youth never materialized to the extent feared." supra *Kimbrough* at 568.

The court also noted in *Kimbrough*, the anomalous result when the 100:1 ratio is utilized, in that retail crack dealers get longer sentences than wholesale drug distributors who supplied them the powder cocaine from which crack is produced. *Kimbrough*, supra.

And finally the court also noted in *Kimbrough* at page 568, that the crack/ powder sentencing differential fosters disrespect for, and lack of confidence in, the criminal justice system because of the widely held perception that it promotes unwarranted disparity based on race. In stating the forgoing, the court noted that approximately "85% of defendants convicted of crack offenses in Federal Court are black; thus these severe sentences required by the 100:1 ratio are imposed "primarily upon black offenders" *Kimbrough*, supra.

This court is well aware of the recent Supreme Court decision discussed above in *Kimbrough*. However, Your Honor is respectfully reminded that the sentencing court "… may determine, however, that, in the particular case, a within guidelines sentence is 'greater then necessary' to serve the objectives of sentencing. 18 U.S.C § 3553 (a). [Further citation omitted]

In so concluding, the Supreme Court noted the sentencing commission's conclusion that "the 100:1 crack/powder ratio… significantly overstates the differences between the two forms of [cocaine base and powder cocaine]. The court also acknowledged "the commission recommended that the ratio be" substantially reduced.

Despite the mountain of research taking issue with the 100:1 ratio, the sentencing commission's recommendations to Congress to reduce the ratio substantially, and the directive

**KELLY & RUBIN, LLP.**

Page 6
Judge Lewis A. Kaplan
May 5, 2008

from Congress noted in *Kimbrough* to "propose revision of the drug quantity ratio of crack cocaine to powder cocaine under the relevant statutes and guidelines," Mr. Davis stands before your Honor awaiting sentence under current guidelines and law that impose the 100:1 ratio.

In considering the crack/powder disparity, many courts have sought to balance the present day reality of the differences between the two substances, the Supreme Court's holdings in *Booker* and *Kimbrough*, as well as the factors to be considered under §3553.

It is respectfully requested that this court impose a sentence of 120 months incarceration. By doing so, a fair balance is struck taking all factors into consideration, as is outlined below.

While asking for a sentence that is a substantial departure from the guideline range, the Supreme Court noted in *Gall v. U.S.* 128 S.C.T. 586 at 590, "that there is no requirement for "extraordinary" circumstances ... or ... a rigid mathematical formula using a departure's percentage as the standard for determining the strength of the justification required for a specific sentence".

However, 10 years in Federal prison is a sentence that under all the circumstances here, satisfies the goals of sentencing under §3553(a)(2). The defendant has admitted to a conspiracy that involves 300 grams, or approximately 10.7 ounces of cocaine base, and 100 grams, or approximately 3.6 ounces of powder cocaine. While not an insignificant amount, not an amount that would place the defendant in the category of major drug offenders.

Ten years adequately reflects the seriousness of the crime, promotes respect for the law, and provides just punishment for the offense. It reflects the seriousness of the offense because it results in a man's incarceration for what by most actuarial tables will be approximately one

KELLY & RUBIN, LLP.

Page 7
Judge Lewis A. Kaplan
May 5, 2008

seventh of Mr. Davis' life.[1] Additionally, it promotes respect for the law, and provides just punishment, because it does not unnecessarily punish in an unduly severe manner.

Such a sentence provides adequate deterrence to criminal conduct by ensuring that those who engage in behavior of the type that Mr. Davis did, are imprisoned for a substantial period of time.

The issue of recidivism in this particular case has been addressed separately, but it is worth repeating that upon his release after a ten year sentence, Mr. Davis will be approaching his 50th birthday, an age at which the likelihood of continued criminal behavior substantially drops.

## LETTERS FOR THE COURT'S CONSIDERATION

Attached are letters from both the defendant's family and from the defendant himself. As the court can see, Mr. Davis has a loving family including his mom, stepfather, wife and children. I think it bears repeating that when Mr. Davis asked me to remind the court that locking up a man with a family like his was an exceptional hardship, I told him that court and AUSA will probably tell him that he should have been thinking about that before he decided to sell crack. He looked down and agreed that he should have been. His remorse for letting his family down was palpable. The letter from his wife dated November 8, 2007 explains that very clearly.

In the attached letter dated March 25, 2008 my client does a much better job than I ever could of relating to the court how this arrest and the prospect of incarceration has impacted his life and that of his family. The probable terminal illness of his mom and the fact that his

---

[1] Black men 37 years of age have approximately 35 additional years to live. See CDC's National Vital Statistics Report, Vol 51, No.3, 12-19-2002.

mfr:davisA.105(alt)

KELLY & RUBIN, LLP.

Page 8
Judge Lewis A. Kaplan
May 5, 2008

daughter is receiving counseling, all while he is unable to be with them, has had a profound impact on him.

Also attached are his certificates indicating completion of a legal research class and a behavioral management course, all done while he has been incarcerated. Completion of these courses demonstrates that Mr. Davis is serious and motivated about using his time in custody to become a better person than he was when he entered the federal correctional system.

## CONCLUSION

The defendant's acceptance of responsibility, remorse, and demonstrated desire for rehabilitation and his expected age at the time of his release, all combine to make it extremely unlikely that he will commit additional crimes in the future. The goals of sentencing: rehabilitation, retribution, and deterrence have all begun, and will continue until the defendant's release.

It is respectfully submitted that all things considered, a sentence of 120 months imprisonment will accomplish all the goals of sentencing in that it is reasonable and sufficient, but not greater than necessary, to satisfy the goals of sentencing under 18 U.S.C. §3553 (a).

Respectfully submitted,

Michael F. Rubin, Esq. (MR 0697)
Attorney for the Defendant
275 Seventh Avenue, Suite 1505
New York, NY 10001
T: (212) 691-9393
F: (212) 691-1485

mfr:davisA.105(alt)